# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| **BRAYAN DAVID MACHUCA-MEJIA,** | § § § | |
| *Petitioner*, | § § | |
| v. | § § | |
| **MARY DE ANDA-YBARRA,** *in her official capacity as* Director of the El Paso Field Office of U.S. Immigration and Customs Enforcement and Removal Operations; **JOHN DOE,** *in his official capacity as* Warden of the El Paso Service Processing Center (El Paso Camp East Montana); **KRISTI NOEM,** *in her official capacity as* Secretary of the United States Department of Homeland Security; **TODD LYONS,** *in his official capacity as* Acting Director of U.S. Immigration and Customs Enforcement; **PAMELA BONDI,** *in her official capacity as* Attorney General of the United States; **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE);** *and* **EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,** | § § § § § § § § § § § § § § § § § § § § | **EP-25-CV-00641-DCG** |
| *Respondents*. | § § | |

## ORDER TO SHOW CAUSE

Petitioner Brayan David Machuca-Mejia ("Machuca-Mejia" or "Petitioner") challenges his detention pursuant to 28 U.S.C. § 2241.[1] The issues raised in his Petition require an answer from Respondents. The Court therefore **ORDERS** Respondents to show cause why the Court should not grant a writ of habeas corpus.

---

[1] *See generally* Pet., ECF No. 1.

I.   **Background**

For the purposes of this Order only, the Court presumes the following facts are true. Machuca-Mejia—a native and citizen of Colombia—entered the United States near Eagle Pass, Texas, on May 20, 2023.[2] United States Immigration and Customs Enforcement ("ICE") screened, detained, and paroled Machuca-Mejia.[3] Two years later, Machuca-Mejia was arrested and detained for a traffic violation in Miami, Florida.[4] He was immediately transferred into federal immigration custody, and he has been continuously detained since July 18, 2025.[5] Machuca-Mejia appeared in October for a bond hearing, where the Immigration Judge ("IJ") denied bond on the basis of "no jurisdiction."[6]

On December 10, 2025, Machuca-Mejia filed the instant "Petition for Writ of Habeas Corpus" (ECF No. 1) while detained at Camp East Montana in El Paso, Texas.[7] He asks the Court to order his immediate release or a constitutionally adequate bond hearing.[8] Machuca-Mejia concurrently filed a "Motion for Temporary Restraining Order" (ECF No. 2), requesting "narrowly tailored relief prohibiting Respondents and those acting in concert with them from

---

[2] *Id.* at 2.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the internal pagination of the cited document.

[3] *Id.* (stating that the date of parole was June 4, 2023).

[4] *Id.*

[5] *Id.*

[6] *Id.* at 3. *See also id.* at 13–15 (summarizing Petitioner's argument that he was improperly subjected to mandatory detention under 8 U.S.C. § 1225(b)).

[7] *Id.* at 6.

[8] *Id.* at 2.

transferring him outside the Western District of Texas, El Paso Division, or removing him from the United States, while his habeas petition is pending."[9] He additionally requests that, after briefing and a hearing, the Court enter a preliminary injunction (1) extending the prohibition on his transfer and removal during the duration of this case, and (2) directing Respondents to provide him with a bond hearing or immediate release.[10]

## II.   Discussion

### A.   Habeas Corpus Petition

Under 28 U.S.C. § 2241, a detainee may challenge his confinement as unlawful by filing a habeas corpus petition.[11] The Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules") specify what the Court must do after receiving such a petition. Although the Habeas Rules govern petitions filed under 28 U.S.C. § 2254, they apply also to petitions filed pursuant to § 2241.[12]

Habeas Rule 4 directs that the Court "examine" a petition and "dismiss" it "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to any

---

[9] *See* Mot. TRO, ECF No. 2, at 2.

[10] *See id.* at 9.

[11] 28 U.S.C. § 2241(c) (requiring petitioner to show that he is "in custody in violation of the Constitution or laws or treaties of the United States"); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

[12] *See* Rules Governing Section 2254 Cases ("Habeas Rules"), Rule 1(a) ("These rules govern a petition for a writ of habeas corpus filed in a United States district court under 28 U.S.C. § 2254"); *see also* Habeas Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)").

*See also Perez v. Hijar*, No. 22–50904, 2023 WL 4559366, at *1 (5th Cir. July 17, 2023) ("Rule 1(b) of the rules governing § 2254 cases articulates that these rules may apply to other habeas corpus petitions as well").

relief."[13] If dismissal is not appropriate, the Court shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted."[14] Should the petition survive prescreening, "the judge *must* order the respondent[s] to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."[15] 28 U.S.C. § 2243 requires that the response "be returned within three days" or "not exceeding twenty days."[16] However, this Court and others have held that courts have "discretionary authority" to alter the "strict time limits prescribed by § 2243."[17]

Having preliminarily examined the foregoing petition, the Court concludes that (1) summary dismissal is not appropriate, and (2) an extension of the default response time is not warranted. The Court will therefore order Respondents to show cause within three days why the Court should not grant Machuca-Mejia's Petition. If necessary, the Court will order a hearing or additional briefing after reviewing the parties' filings.

---

[13] *See* Habeas Rule 4; *see also Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) ("The district court has the power under Rule 4 to examine and dismiss frivolous habeas petitions prior to any answer or other pleading by the state.").

[14] 28 U.S.C. § 2243.

[15] Habeas Rule 4; *see also* 28 U.S.C. § 2243 (requiring that the district court issue the order "forthwith"); *Simpson v. Ortiz*, 995 F.2d 606, 609 (5th Cir. 1993) (concluding that a district court complied with the "forthwith" requirement by issuing a show cause order "just twenty-one days after [the] petition was filed").

[16] 28 U.S.C. § 2243.

[17] *See, e.g.*, *Y.V.S. v. Wolf*, No. 3:20-cv-228-DCG, 2020 WL 4926545, at *1 (W.D. Tex. Aug. 21, 2020) (collecting cases) (reasoning that because Congress approved the Habeas Rules in 1976 and enacted § 2243 in 1948, the former governs the district court's authority to set response deadlines).

### B. Motion for Temporary Restraining Order

The purpose of a temporary restraining order ("TRO") "is to preserve the status quo and prevent irreparable injury until the court renders a decision on the merits."[18] Therefore, the movant must show: "(1) a substantial likelihood of success on the merits, (2) a substantial threat that [the movant] will suffer irreparable harm if the injunction is not granted, (3) that the threatened injury outweighs any damage that the injunction might cause the [non-movant], and (4) that the injunction will not disserve the public interest."[19] When the Government is the opposing party, the third and fourth factors will merge.[20]

Machuca-Mejia is detained at Camp East Montana in El Paso, Texas.[21] Because detention is now his status quo, he "seeks a narrowly tailored temporary restraining order" prohibiting his transfer or removal during the pendency of this action.[22] Many courts, including those in this Division, have granted identical relief pursuant to their "inherent authority to preserve and assess [their] own jurisdiction, *not* as a TRO."[23] This authority is particularly relevant in the

---

[18] *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *4 (5th Cir. Feb. 17, 2022) (citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)).

[19] *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (citing *Planned Parenthood of Hous. & S.E. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005)).

[20] *Nat. Ass'n for Gun Rights, Inc. v. Garland*, 697 F. Supp. 3d 601, 620 (N.D. Tex. 2023) (citing *Nken v. Holder*, 566 U.S. 418 (2009)).

[21] *See* Pet., at 6.

[22] *See* Mot. TRO, at 8–9.

[23] *See, e.g.*, Order, *Quizhpi Caguana v. Noem*, No. 3:25-CV-534-KC (W.D. Tex. Nov. 12, 2025), ECF No. 3 (citing *Sepulveda Ayala v. Noem*, No. 25-CV-5185, 2025 WL 1207655, at *4 (W.D. Wash. Apr. 26, 2025)).

*See also United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[T]he District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief."); *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) ("[T]he ["inherent powers"] doctrine is rooted in the notion that a federal court, sitting in equity, possesses all of

immigration habeas context, where petitioners seeking relief from detention may be removed before their cases are fully considered.[24]

Accordingly, Respondents may not transfer Machuca-Mejia out of the El Paso Division of the Western District of Texas or remove him from the country during the pendency of this case or until the Court orders otherwise. This relief is granted *not* as a TRO, but to preserve the Court's jurisdiction and ability to assess the case on its merits.[25] The Court therefore grants the "Motion for Temporary Restraining Order" (ECF No. 2) as it pertains to the foregoing relief.

### C.   Motion for Preliminary Injunction

Machuca-Mejia separately requests that the Court order "appropriate briefing and hearing" on a preliminary injunction ("PI") (1) extending restrictions on his transfer and removal and (2) directing Respondents to provide him with a bond hearing or immediate release.[26] The

---

the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion."); *Santiago v. Noem*, No. 3:25-CV-361-KC, 2025 WL 2606118, at *2 (W.D. Tex. Sept. 9, 2025) ("The Court finds persuasive the decisions enjoining removal and transfer of petitioners under the Court's inherent power to preserve its ability to hear the case.").

[24] *See, e.g.*, Order, *Pablo Pablo v. Lyons*, No. 3:25-CV-566-DCG (W.D. Tex. Dec. 5, 2025) ("By the time the Court ordered Respondents not to remove [the petitioner], he had arrived in Guatemala City."); Order, *Blandon Raudez v. Bondi*, No. 3:25-CV-493-DB (W.D. Tex. Oct. 30, 2025), ECF No. 11 (admonishing United States Immigration and Customs Enforcement ("ICE") for removing habeas petitioner from El Paso to Mexico "after the Court unequivocally ordered the parties not to do so, and before he could be heard in this Court of law.").

[25] *See supra* note 23. The Court is further persuaded by the authority vested in federal courts by the All Writs Act to preserve and exercise their limited jurisdiction. *See* 28 U.S.C. § 1651 [hereinafter "All Writs Act"]; *ITT Cmty. Dev. Corp.*, 569 F.2d at 1359 ("The All Writs Act may be said to provide a federal court with those writs necessary to the preservation or exercise of its subject matter jurisdiction. The Act is necessary because federal courts, being courts of limited jurisdiction, would not otherwise possess the tools necessary to implement their jurisdictional grants.").

[26] *See* Mot. TRO, at 9.

Court anticipates that such briefing would be duplicative of the issues raised in the Petition.[27] In the interest of judicial economy, the Court denies the "Motion for Temporary Restraining Order" (ECF No. 2) as it pertains to his request to set a preliminary injunction briefing schedule and hearing.

### III.  CONCLUSION

For the foregoing reasons, the Court **ORDERS** Respondents to file a response to the "Petition for Writ of Habeas Corpus" (ECF No. 1) by no later than **December 18, 2025**. This response must identify each factual allegation contained in the Petition that Respondents dispute. Machuca-Mejia may file a reply within **three days** of service of the response.[28] If necessary, the Court will order a hearing or additional briefing upon review of the pleadings.

The Court **GRANTS IN PART** Petitioner's "Motion for Temporary Restraining Order" (ECF No. 2) as it pertains to his request to prohibit his transfer or removal. Respondents and their assigns **SHALL NOT** (1) remove or deport Machuca-Mejia from the United States, or (2) transfer Machuca-Mejia to any facility outside the boundaries of the El Paso Division of the Western District of Texas, until the Court orders otherwise or this case is closed.

The Court **DENIES IN PART** Petitioner's "Motion for Temporary Restraining Order" (ECF No. 2) as it pertains to his request to set a preliminary injunction briefing schedule and hearing.

---

[27] *See* Pet., at 2.

[28] *See generally* FED. R. CIV. P. 6(a) (providing methods for computing time).

**IT IS FINALLY ORDERED** that the District Clerk shall **SERVE** copies of the "Petition for Writ of Habeas Corpus" (ECF No. 1), "Motion for Temporary Restraining Order" (ECF No. 2), and this Order upon Respondents and the United States Attorney in El Paso, Texas.[29]

**So ORDERED and SIGNED this 15th day of December 2025.**

*[signature]*

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[29] *See* Habeas Rule 4 ("[T]he clerk must serve a copy of the petition and any order on the respondent[s] and on the attorney general or other appropriate officer of the state involved.").